IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ABIRA MEDICAL LABORATORIES, LLC | : | CIVIL ACTION |
| d/b/a GENESIS DIAGNOSTICS | : | |
| | : | |
| v. | : | |
| | : | |
| SIERRA HEALTH & LIFE INSURANCE | : | |
| COMPANY, INC. | : | NO. 24-1979 |

**MEMORANDUM**

**Padova, J.**                                                                    **December 9, 2024**

Plaintiff Abira Medical Laboratories, LLC d/b/a Genesis Diagnostics commenced this breach of contract action against Defendant Sierra Health & Life Insurance Company, Inc. ("Sierra"), seeking to obtain payment for laboratory testing services that it provided to Sierra's insureds.  Sierra has filed a Motion to Compel Arbitration pursuant to the arbitration provisions of an "Ancillary Provider Participation Agreement" that Plaintiff executed.  For the reasons that follow, we grant Sierra's Motion and stay this case while the parties arbitrate their dispute.

**I.      FACTUAL BACKGROUND**

At all relevant times, Plaintiff operated a licensed medical testing laboratory business in Langhorne, Pennsylvania.  (Compl. ¶ 10.)  Sierra, an insurance company that is an affiliate of United Healthcare Company, provides health insurance to member/subscribers, some who have obtained laboratory testing services from Plaintiff.  (Id. ¶¶ 1, 6-7.)

In March of 2019, Plaintiff and UnitedHealthcare Insurance Company,[1] which was "contracting on behalf of itself and those entities that are United's Affiliates," entered into an

---

[1] Although Plaintiff refers only to "United Healthcare Company" in its Complaint, it does not distinguish between United Healthcare Company and UnitedHealthcare Insurance Company in its Response to Sierra's Motion to Compel or argue that the two names refer to two separate entities.  It also refers to UnitedHealthcare Insurance Company with the shorthand "UHC." (Pl.'s Resp. at 1 ¶ 1.)

"Ancillary Provider Participation Agreement" (the "Participation Agreement" or "Agreement."[2]

(Agreement (Mot. Ex. A) at 1; see also id. at 17.)  The Participation Agreement provides that

UnitedHealthcare Insurance Company and its Affiliates desire to make Plaintiff's services

available to its customers, and that Plaintiff desires to provide those services "under the terms

and conditions set forth in the Agreement." (Id. at 1.)  Among the terms in the Agreement is an

arbitration provision.  (Id. at 12-13, 17.)  Specifically, Article VII, entitled "Dispute Resolution,"

provides in pertinent part at follows:

> The parties will work together in good faith to resolve any and all
> disputes between them ("Disputes") including but not limited to
> the existence, validity, scope or termination of this Agreement or
> any term thereof, and all questions of arbitrability, with the
> exception of any question regarding the availability of class
> arbitration or consolidated arbitration . . . .  Disputes also include
> any dispute in which [Plaintiff] is acting as an assignee of one or
> more Customer.  In such cases, [Plaintiff] agrees that the
> provisions of this Article VII will apply, including without
> limitation the requirement for arbitration.
>
> . . . For Disputes regarding payment of claims, a party must have
> timely initiated, and completed, the claim reconsideration and
> appeal process as set forth in the Administrative Guide in order to
> initiate the Dispute process.
>
> If the parties are unable to resolve any such Dispute within 60 days
> following the date one party sent written notice of the Dispute to
> the other party, and if either party wishes to pursue the Dispute, it
> may do so only by submitting the Dispute to binding arbitration
> conducted by the American Arbitration Association ("AAA") in
> accordance with the AAA Healthcare Payor Provider Arbitration
> Rules . . . .
>
> *        *        *
>
> The decision of the arbitrator(s) on the points in dispute will be
> binding.  The parties acknowledge that because this Agreement
> affects interstate commerce the Federal Arbitration Act applies.

---

[2] The Participation Agreement defines "United's Affiliates" to mean "those entities controlling, controlled by, or under common control with UnitedHealthcare Insurance Company." (Agreement at 2 ¶ 1.8.)

(Id. at 12-13.)

Each time that Plaintiff provided laboratory testing services to Sierra's insureds, the insureds executed assignments of benefits, giving Plaintiff a right to seek reimbursement from Sierra for those services. (Compl. ¶¶ 10-13.) According to the Complaint, Sierra repeatedly failed to respond to properly submitted claims for payment or fabricated a pretextual basis to refuse payment. (Id. ¶ 14.)

Plaintiff initiated this action by filing a Complaint against Sierra in the Court of Common Pleas of Bucks County, Pennsylvania, after which Sierra removed the action to this court based on diversity jurisdiction. The Complaint contains four Counts: Breach of Contract, Breach of Implied Covenant of Good Faith and Fair Dealing, Equitable and/or Promissory Estoppel, and Quantum Meruit/Unjust Enrichment. Each Count seeks payment of approximately $350,000.00 in unpaid claims. On June 21, 2024, Sierra filed its Motion to Compel Arbitration, to which it attached the Participation Agreement. Plaintiff opposes the Motion.

## II.    LEGAL STANDARD

Motions to compel arbitration can be evaluated under "two possible standards." Young v. Experian Info. Sols., Inc., 119 F.4th 314, 317 (3d Cir. 2024). Federal Rule of Civil Procedure 12(b)(6)'s motion to dismiss standard applies "when 'the existence of a valid agreement to arbitrate between the parties is apparent from the face of the complaint.'" Id. at 317-18 (quoting Singh v. Uber Techs. Inc., 939 F.3d 210, 216 (3d Cir. 2019)) (citing Guidotti v. Legal Helpers Debt Resolution, L.L.C., 716 F.3d 764, 776 (3d Cir. 2013)). In contrast, the Rule 56 summary judgment standard applies where "a complaint does not set forth clearly that the claims are subject to an arbitration agreement, or if the plaintiff rebuts the motion to compel 'with reliable evidence that is more than a naked assertion . . . that it did not intend to be bound by the arbitration agreement.'" Id. at 319 (alteration in original) (quoting Guidotti, 716 F.3d at 774).

3

When "[a]pplying [the Rule 56] standard to a motion to compel arbitration, a 'district court should only grant [the] motion . . . if there is no genuine dispute as to any material fact and, after viewing facts and drawing inferences in favor of the non-moving party, the party moving to compel is entitled to judgment as a matter of law.'" Id. 317 n.4 (third and fourth alterations in original) (quoting Jaludi v. Citigroup, 933 F.3d 246, 251 n.7 (3d Cir. 2019)).

In the instant case, the parties disagree as to whether the Rule 12(b)(6) or Rule 56 standard applies to Sierra's Motion to Compel Arbitration.  Sierra argues that we should apply the Rule 12(b)(6) standard because the Participation Agreement "defines the parties' relationship and is therefore integral to the dispute at issue in the Complaint" and because Plaintiff has not responded to Sierra's Motion with additional facts sufficient to place the agreement to arbitrate in issue.  (Sierra Mem. at 4.)  Plaintiff counters that the Rule 56 standard applies because arbitrability is not apparent on the face of the Complaint.  (Pl.'s Resp. at 4-5 ¶ 10.)

We agree with Plaintiff that Rule 56 provides the applicable standard because the Complaint does not reference the Participation Agreement, much less its arbitration provisions, does not include the Participation Agreement as an attachment, and does not otherwise "set forth clearly that the claims are subject to an arbitration agreement."  Young, 119 F.4th at 319 (concluding that the district court correctly determined that the Rule 56 standard applied where the complaint made no reference to the arbitration agreement, plaintiff did not attach the agreement as an exhibit, and plaintiff did not base his claims on the existence of the agreement); see also Guidotti, 716 F.3d at 774 (explaining that the Rule 12(b)(6) standard does not apply when "'the motion to compel arbitration does not have as its predicate a complaint with the requisite clarity' to establish on its face that the parties agreed to arbitrate" (quoting Somerset Consulting, LLC v. United Capital Lenders, LLC, 832 F. Supp. 2d 474, 482 (E.D. Pa. 2011)). We will therefore analyze Sierra's Motion using the Rule 56 standard.

### III.    DISCUSSION

Sierra argues in its Motion that, pursuant to both the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq, and the Participation Agreement, we should stay this action and compel Plaintiff to arbitrate its claims before the AAA.  Plaintiff does not dispute that it executed the Participation Agreement and that the Agreement contains the above-quoted arbitration provisions.  It argues, however, that Sierra cannot enforce the arbitration provisions because it did not sign the Agreement for itself and has not established that UnitedHealthcare Insurance Company had actual or apparent authority to sign the Agreement on Sierra's behalf.  In the alternative, Plaintiff seems to suggest that, because the Complaint and its supporting documents do not themselves establish the arbitrability of its claims, we should order discovery and only thereafter consider a renewed motion to compel arbitration under Rule 56.  (Pl.'s Resp. at 4-5 ¶ 10.)

"[W]hen a party resists arbitration under an existing arbitration clause[,] . . . the FAA allows a district court to compel . . . arbitration . . . ."  John Hancock Mut. Life Ins. Co. v. Olick, 151 F.3d 132, 136 (3d Cir. 1998) (citing 9 U.S.C. § 4; PaineWebber, Inc. v. Hartmann, 921 F.2d 507, 511 (3d Cir. 1990)), overruled on other grounds by Howsam v. Dean Witter Reynolds, 537 U.S. 79, 85 (2002)).  Section 4 of the FAA specifically provides as follows:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, . . . for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4.  The FAA further states that when the court refers a case to arbitration pursuant to the FAA, it "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the [parties' arbitration] agreement." Id. § 3.

"Under the [FAA], arbitration is a matter of contract, and courts must enforce arbitration contracts according to their terms." Henry Schein, Inc. v. Archer & White Sales, Inc., 586 U.S 63, 67 (2019) (citing Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 67 (2010)). In deciding whether to compel arbitration, we ordinarily "consider whether (1) [a] 'valid agreement to arbitrate exists' and (2) 'the particular dispute falls within the scope of that agreement.'" White v. Samsung Elecs. Am., Inc., 61 F.4th 334, 338 (3d Cir. 2023) (quoting Trippe Mfg. Co. v. Niles Audio Corp., 401 F.3d 529, 532 (3d Cir. 2005)). "However, when an arbitration provision, by 'clear and unmistakable evidence,' contains a valid delegation clause, the court's inquiry is limited to the first step: determining whether a valid agreement to arbitrate exists." Eichlin v. GHK Co., Civ. A. No. 24-1502, 2024 WL 3937265, at *2 (E.D. Pa. Aug. 26, 2024) (quoting Coulter v. Experian Info. Sols., Inc., Civ. A. No. 20-1814, 2021 WL 735726, at *4 (E.D. Pa. Feb. 25, 2021)) (citation omitted). "[I]f a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." Id. (quoting Henry Schein, Inc., 586 U.S. at 69).

"To determine whether a valid arbitration agreement exists, we 'apply ordinary state-law principles that govern the formation of contracts.'" James v. Glob. TelLink Corp, 852 F.3d 262, 265 (3d Cir. 2017) (quoting First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995)). Under Pennsylvania law, on which Plaintiff relies, a party seeking to establish the existence of an agreement "must show that: (1) both parties have manifested an intention to be bound by the terms of the agreement; (2) the terms of the agreement are sufficiently definite to be specifically enforced; and, (3) there is mutuality of consideration." Ecore Int'l, Inc. v. Downey, 343 F. Supp. 3d 459, 487 (E.D. Pa. 2018) (quoting Redick v. Kraft, Inc., 745 F. Supp. 296, 300 (E.D. Pa. 1990)) (citations omitted); see also Blair v. Scott Specialty Gases, 283 F.3d 595, 603 (3d Cir. 2002) (quotation and citations omitted).

Plaintiff argues that the evidence does not support a conclusion that there is a valid agreement to arbitrate in this case because Sierra has not shown the first of the above three requirements, i.e., that both parties "manifested an intention to be bound by the terms of agreement." Ecore Int'l, 343 F. Supp. 3d at 487 (quotation omitted) (citations omitted). Specifically, Plaintiff asserts that the evidence does not demonstrate that Sierra manifested an intention to be bound by the terms of the arbitration agreement because Sierra did not sign the Participation Agreement or produce evidence that UnitedHealthcare Insurance Company had authority to enter the Participation Agreement on its behalf.  However, the Participation Agreement's plain terms state that United Healthcare Insurance Company entered the Agreement on behalf of not only itself, but also its Affiliates, and Sierra has plainly manifested its intention to be bound by the arbitration agreement as an Affiliate by its simple act of filing the Motion to Compel Arbitration. See Shell's Disposal & Recycling, Inc. v. City of Lancaster, 504 F. App'x 194, 201 (3d Cir. 2012) (explaining that the inquiry into intent is "an objective one" and turns on whether the "party behaves in such a way that a reasonable person would apprehend that he intends to be bound by the terms of the agreement" (citing Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 582 (3d Cir. 2009)).  In addition, Plaintiff has manifested its own intention to be bound to the arbitration agreement by signing the Participation Agreement.  We therefore reject Plaintiff's argument that the record does not establish the existence of an agreement to arbitrate because it does not support the conclusion that the parties—and specifically Sierra— intended to be bound by the arbitration agreement.

Plaintiff alternatively appears to suggest that we should deny Sierra's Motion at this stage of the proceedings and order discovery on the issue of arbitrability.  The United States Court of Appeals for the Third Circuit has made clear that Rule 56 discovery is only available in connection with a motion to compel arbitration where the party seeking discovery identifies an

issue of material fact for which discovery is necessary.  Young, 119 F.4th at 319-320 (explaining

that Rule 56 discovery is only warranted on a motion to compel arbitration where there is a

material factual dispute to be resolved); see also id. at 320 (stating that a court may defer

decision on a motion for summary judgment to allow the respondent to take additional discovery

if the nonmovant "shows . . . that . . . it cannot present facts essential to justify its opposition"

(alterations in original) (quoting Fed. R. Civ. P. 56(d)).  Here, Plaintiff asserts that "there is a

clear factual question as to whether [Sierra] is an 'Affiliate' of  [UnitedHealthcare Insurance

Company]." (Pl.'s Resp. at 7.)  However, this issue is not material to the threshold—and, in this

case, dispositive—question of whether Plaintiff entered into a contractual agreement to arbitrate

disputes with UnitedHealthcare Insurance Company and its Affiliates.  See Young, 119 F.4th at

320 (concluding that plaintiff had no right to discovery in connection with motion to compel

arbitration where there was "no factual dispute about the existence of the agreement to

arbitrate").  Indeed, Plaintiff does not dispute that it entered into the Participation Agreement

with UnitedHealthcare Insurance Company and its Affiliates, and that the Agreement contained

the arbitration provisions.  Thus, the existence of a valid arbitration agreement is not disputed.

That being the case, the factual question that Plaintiff suggests remains open and thereby

ripe for discovery, i.e., whether Sierra is an Affiliate of UnitedHealthcare Insurance Company, is

strictly a question regarding the scope of the arbitration agreement and the arbitrability of

Plaintiff's claims against Sierra.  Article VII of the Agreement specifically delegates to the

arbitrator the resolution of all "Disputes," including those regarding the "scope . . .  of [the

Agreement] or any term thereof, and all [] questions of arbitrability."  (See Agreement at 12.)

"[T]he Supreme Court [has] held that . . . unless a party challenges a 'delegation provision

specifically, [the court] must treat [the delegation] as valid . . . and must enforce it under §§ 3

and 4 [of the FAA] . . . .'"  Young, 119 F.4th at 321 (third, fourth, and fifth alterations in

original) (quoting <u>Rent-A-Center</u>, 561 U.S. at 72).  Here, Plaintiff has not lodged a specific

challenge to the arbitration provisions' delegation to the arbitrator all Disputes, including those

regarding the scope of the Agreement and all pertinent questions of arbitrability.  We are

therefore bound by the terms of that delegation and cannot resolve Plaintiff's challenges to the

arbitrability of its claims and/or the scope of the arbitration agreement.  Furthermore, because we

are not at liberty to resolve such issues, it would be inappropriate for us to order discovery as to

those matters.  <u>Id.</u> at 315 (stating that "discovery is not required when . . . the existence and

validity of [an] arbitration agreement are not at issue and any disputes over enforceability and

arbitrability are themselves delegated to the arbitrator"); <u>see also</u> <u>id.</u> at 322 (finding that the

district "'[c]ourt should . . . have granted the motion to compel arbitration without discovery"

once it was "satisfied that the making of the agreement for arbitration . . . [was] not in issue.'"

(quoting 9 U.S.C. § 4) (additional citation omitted)).

In sum, having found that there is a valid arbitration agreement between Plaintiff, on the

one hand, and United Healthcare Insurance Company and its Affiliates, on the other, we grant

Sierra's Motion to Compel Arbitration, and we leave to the arbitrator to decide whether

Plaintiff's payment claims against Sierra are within the scope of the arbitration agreement and

arbitrable.  <u>See</u> <u>Henry Schein, Inc.</u>, 586 U.S. at 69 ("[I]f a valid [arbitration] agreement exists,

and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the

arbitrability issue" (citation omitted)).  In the meantime, we will stay the instant action.  As noted

above, the FAA provides that when the court refers a case to arbitration pursuant to the FAA, it

"shall on application of one of the parties stay the trial of the action until such arbitration has

been had in accordance with the terms of the [parties' arbitration] agreement."   9 U.S.C. § 3.

"[T]he plain language of [this provision] affords a district court no discretion to dismiss a case

where one of the parties applies for a stay pending arbitration." <u>Lloyd v. HOVENSA, LLC</u>, 369

F.3d 263, 269 (3d Cir. 2004). Here, Sierra has requested that we stay this matter pending arbitration, and we therefore do so.

## IV.    CONCLUSION

For the reasons stated above, we grant Sierra's Motion to Compel Arbitration and stay the action pending completion of that arbitration. An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova, J.

_____

John R. Padova, J.

10